**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| LEONA JEAN STEPHENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  11 C 4429 |
| v. | ) | |
| | ) | Jeffrey T. Gilbert |
| MICHAEL J. ASTRUE, Commissioner of | ) | Magistrate Judge |
| Social Security, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Leona Jean Stephenson ("Claimant") brings this action under 42 U.S.C.

§ 405(g), seeking reversal and remand of the decision by Defendant Michael J. Astrue,

Commissioner of Social Security ("Commissioner"), in which the Commissioner denied

Claimant's application for disability insurance benefits. This matter is before the Court

on Claimant's motion for summary judgment [Dkt.#20]. Claimant argues that the

Administrative Law Judge's ("ALJ") decision denying her application for disability

insurance benefits should be reversed and remanded because the ALJ improperly credited

the opinions of consulting, non-treating physicians over her treating physicians.  For the

reasons set forth below, Claimant's motion for summary judgment [Dkt.#20] is granted in

part and denied in part.  The decision of the Commissioner of Social Security is reversed

with respect to the determination as to Claimant's mental impairments and affirmed with

respect to the determination as to Claimant's physical impairments.  This matter is

remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

## I. Background

### A. Procedural History

Claimant filed an application for Social Security disability insurance benefits and supplemental security income on July 10, 2010, alleging a disability onset date of February 1, 2007. R.52-53. Claimant's date last insured was December 31, 2011.[1] R.51. The Social Security Administration ("SSA") denied her application on September 25, 2007. R.54. Claimant then filed a request for reconsideration on October 16, 2007, which was denied on May 12, 2008. R.60, 62. Claimant filed a timely written request for a hearing on September 10, 2008. R.69. A hearing was held before the ALJ on March 11, 2010, at which both Claimant and Vocational Expert Leanne L. Caird testified. R.29. On May 11, 2010, the ALJ issued a decision denying the claims for benefits. R.9-28. Claimant filed a timely request on May 24, 2010, for review of the ALJ's decision with the SSA's Appeals Council. R.8. On April 29, 2011, the Appeals Council denied her request for review, thus rendering the ALJ's decision a final administrative decision by the Commissioner. R.1-4. Claimant timely filed a complaint in this court pursuant to 42 U.S.C. § 405(g) on July 15, 2011 [Dkt.#7].

---

[1] Because Social Security disability benefits under Title II are insurance against lost income caused by disability, the applicant/worker must show a recent connection to the work force to maintain insured status. 42 U.S.C. § 423(c) and 20 C.F.R. § 404.130. This generally means the applicant was working in 20 of the last 40 quarters. For an applicant who is 31 years old or older, the "date last insured status" generally is five years after his or her date of last work.

**B. Personal History**

Claimant was born on June 27, 1959, and was forty-seven years old at the time of the alleged onset of her disability on February 1, 2007.  R.51. She has an 8th grade education.  R.34, 140. Her past relevant work was as a personal assistant for individuals with disabilities from 2000 to 2007.  R.35, 142. Claimant claims she was forced to stop working on February 1, 2007, due to her physical and mental impairments.  R.36, 135.

**C. Medical Evidence**

<u>1. Claimant's Physical Impairments</u>

Claimant suffers from multiple physical impairments including HIV, hypertension, asthma, obesity, and osteoarthritis. R.14. She was first diagnosed with HIV in February of 2007.  R.220. However, Claimant is asymptomatic, does not take any anti-retroviral medications, and has not had any problem with opportunistic infections.  R.301.

Claimant also suffers from hypertension for which she has been taking medication off and on for the last twenty years.  R.301. Dr. Regina Kim, Claimant's primary treating physician, performed an exercise stress/resting test on April 21, 2009, indicating no ST-T changes to suggest ischemia or any arrhythmia.  R.524. Claimant also was noted to consistently struggle with obesity which has become more severe over time.  R.266, 377, 508. As of December 17, 2007, Claimant had a BMI of 40.75, but on January 12, 2010, she was noted to have a BMI of 48.  R.366, 521. Claimant's trouble with asthma also was noted to cause shortness of breath.  R.37.

Claimant also has a history of osteoarthritis causing pain in her knees, shoulders, and fingers.  R.301. X-rays were taken of the claimant's shoulder on April 14, 2009, due

to pain, but all results were normal.  R.525. However, a MRI was taken a week later

which revealed moderate tendinosis and moderate degenerative arthropathy of the joint at

the top of the shoulder.  R.532. On October 12, 2009, Dr. Kim noted Claimant

complaining of pain in her legs, which is worse with activity and limits her to walking

three blocks. R.508. This pain was noted to improve with medication.  R.508. X-rays of

Claimant's lumbar spine on January 12, 2010, showed a moderate loss of disc space

height at the L5/S1 level.  R.536.

On January 15, 2010, Dr. Kim completed an assessment regarding Claimant's

capacity for work related activities.  R.501-507. Dr. Kim noted an ability to lift 20

pounds occasionally and 10 pounds frequently and to sit for two hours, stand for two

hours, and walk for one hour *out of an eight hour work day*.  R.501-502. Somewhat

inconsistently or confusingly, Dr. Kim also indicated that the Claimant could sit for two

hours, stand for two hours, and walk for one hour *at one time*. R.501-502 (emphasis

supplied).  Dr. Kim further noted limitations in Claimant's ability to climb stairs, stoop,

crouch or crawl, and an inability to climb ladders and kneel.  R.504. However, Dr. Kim

also noted Claimant maintains the ability to shop, travel without assistance, ambulate

without assistance, prepare meals, take care of her personal hygiene, and sort, handle, and

use paper/files.  R.506.

On March 26, 2008, Dr. Barry Fischer performed a consultative evaluation ("CE")

of Claimant for Disability Determination Services.  R.302. Claimant complained of

bilateral knee pain with swelling and Dr. Fischer noted a limited range of motion of both

knees.  R.302-303. Claimant had difficulty squatting and rising and was unable to walk

4

on her toes or heals.  R.304. Dr. Fischer also noted Claimant had some difficulty with

ambulation, but her lower extremity muscle strength was normal and she was still able to

stand and walk with no difficulty.  R.304-305. Claimant also displayed no limitations in

her upper extremities or spinal segments.  R.303-304. Dr. Fischer diagnosed her with

HIV, hypertension, obesity, asthma, and osteoarthritis of both knees.  R.305.

Dr. Charles Wabner, a state agency consultant, performed a physical residual

functional capacity ("RFC") evaluation on May 6, 2008.[2]  R.331. That evaluation

indicated that Claimant is capable of light work as she could lift 20 pounds occasionally

and stand for six hours out of an eight hour work day. R.331.

2. Claimant's Mental Impairments

Claimant reported worsening symptoms of depression and anxiety during a visit

with Dr. Roger Trinh at Howard Brown Health Center on December 17, 2007.  R.283.

Claimant stated that the basis for her problems is her difficult relationship with her ex-

boyfriend who infected her with HIV.  R.283. Claimant also stated she continues to care

for her children without any problem. R. 283. Dr. Trinh noted during a follow-up visit on

December 28, 2007, that Claimant felt a lot less depressed and anxious and that she

believed her medication was helping.  R.285.

Claimant also received weekly psychiatric treatment from Dr. Nancy Luna from

October 2, 2007 through August 11, 2009.  R.476-495. Dr. Luna diagnosed Claimant

with major depressive disorder, recurrent severe without psychotic features and a Global

---

[2] The RFC is the most that a claimant can do despite the effects of her impairments. 20 C.F.R. §
404.1545(a).

Assessment of Functioning ("GAF") score of 40.[3]  R.21. Dr. Luna noted Claimant was

tearful during most sessions and that she suffers from major depression which is

exacerbated by her family history and environmental stress.  R.476-495. Claimant also

was reported to grieve the loss of custody for three of her children and the difficulties she

has raising her remaining three children, two of whom have autism.  R.476-479.

　　　　After almost a year of treatment, Dr. Luna noted that Claimant's depression limits

her ability to meet her basic activities of daily living.  R.481. Dr. Luna wrote a letter on

the Claimant's behalf on April 24, 2008, stating that she suffers from major depression

and, despite her cooperation and commitment to therapy and her medication, she would

struggle to work in any capacity.  R.299.  Claimant also requires assistance from her

son's homemaker, her son's father, and her aunt to perform many common daily

activities such as grocery shopping, cleaning, and cooking. R.299.  Dr. Luna also stated

that there was no concern for a thought disorder or for harm to Claimant's self or others.

R.298.

　　　　Dr. Luna later provided a mental RFC on August 11, 2009.  R.495. Dr. Luna

indicated a diagnosis of major depression with a GAF score of 40.  R.496. Dr. Luna noted

extreme limitations in five categories including maintaining attention and concentration

---

[3] The Global Assessment of Functioning (GAF) scale reports a "clinician's assessment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 1994). Scores below 50 are reserved for those with severe psychological and occupational impairment. *Lechner,* 321 F. Supp. 2d 1015, 1022 n. 7 (citing Diagnostic and Statistical Manual of Mental Disorders (DSM–IV)).

for extended periods and maintaining socially appropriate behavior, and marked limitations in eight categories including carrying out short and simple instructions and sustaining an ordinary routine without supervision, indicating an overall prognosis of poor. R.497-500.

After funding for treatment with Dr. Luna ran out, Claimant began going to the Community Counseling Center of Chicago. R.547. There, Claimant was initially diagnosed with dysthymic disorder/neurotic depression and later with major depression. R.550, 572. Plans were made in January 2010 for Claimant to receive monthly counseling and attend weekly group therapy sessions. R.20.

On May 2, 2008, Dr. Michael J. Schneider, a state agency consultant, performed a psychiatric review and diagnosed Claimant with depression but stated that her depression is insufficient to meet the listing requirements. R.319. Dr. Schneider noted that Claimant's medical providers varied greatly in their assessments of her mental status and stated that a mental RFC would be necessary to evaluate her. R.328. Dr. Schneider then performed a mental RFC and noted moderate limitations in Claimant's ability to maintain attention and concentration for extended periods and her ability to complete a normal workday without interruptions. R.338-339. No other limitations were noted and Dr. Schneider indicated that Claimant retains the capacity to work. R.338-340.

**D. Hearing Testimony**

<u>1. Claimant's Testimony</u>

At the time of the hearing, Claimant was 50 years old, single, and had six children, three of whom lived with her. R.34. Claimant testified that two of these children have

autism and she receives supplemental security income on their behalves. R.34. She stated that she went to school through eighth grade and has past relevant work as a home maker for people with disabilities. R.35. After working full-time for seven years, Claimant became unable to work because she had difficulty getting around and had moods where she would just cry. R.36.

During the hearing, Claimant testified that she suffers from depression, asthma, chronic obstructive pulmonary disease (COPD), HIV, and arthritis. R.37-39. She indicated that she uses a spacer every day to help her breathing, takes medications for HIV, arthritis, and depression, and attends therapy sessions once a week with a psychologist for her depression. R.37-39. Claimant testified to experiencing fatigue due to her medications which make her feel sleepy. R.38. Claimant testified that she often has trouble breathing due to her asthma and COPD and experiences pain in her shoulders, legs, and lower back due to arthritis. R.36-37, 39. In addition, Claimant stated that her depression makes her cry a lot, puts her in moods where she does not want to do anything, and makes it harder for her to perform her daily routine such as cleaning her house. R.39.

Claimant testified that she spends her day cleaning her house and taking care of her children. R.40. Two of the Claimant's children attend school during the day while the oldest son with autism is home all day. R.40-41. The oldest son has a homemaker who comes to the Claimant's house every day for four hours to help take care of him. R. 44. Claimant's middle child also helps care for the youngest son with autism. R.44. The Department of Child and Family Services ("DCFS") also visited Claimant's home due to

Claimant's struggles to care for her children and maintain a clean home. R.44. Claimant testified that her neighbors complained to her landlord about her cleanliness, but this is because her son likes to wipe his feces on the wall and she is forced to clean it up. R.43. DCFS also addressed issues related to Claimant's physical and mental impairments. R.44.

Claimant stated that she is still able to clean her house, do laundry, cook, go grocery shopping, and take her children to the doctor, but these activities take much longer now due to her physical and mental impairments. R.41-42, 45. Claimant further testified that she is able to lift 10 pounds, can walk half a block before getting tired, can stand for about 30 minutes before having to sit down, and can only sit for an hour at a time before her legs go numb and she has difficulty getting up. R.42.

2. Vocational Expert's Testimony

Leanne L. Caird is a Vocational Expert who testified to whether the Claimant would be able to perform her past relevant work and other work in the national economy. R.45-50. The ALJ asked whether an individual closely approaching advanced age, with a limited education and past relevant work as a personal assistant, could perform her past relevant work if she were able to lift and carry 20 pounds occasionally and 10 pounds frequently, be on her feet standing or walking or sitting for six hours out of an eight hour work day, with a moderate inability to maintain attention and concentration for extended periods and complete a normal work day and work week without interruptions from psychological based symptoms. R.47-48. The Vocational Expert testified that this would provide for a light work capacity and allow Claimant to perform her past relevant work as

performed, but not as the Dictionary of Occupational Titles describes it.  R.48. The

Vocational Expert also testified that there is other work Claimant could perform at this

capacity, such as housekeeper, information clerk, and office helper.  R.48-49.

The ALJ then posed whether Claimant could perform her past relevant work and

other work if she were able to lift and carry no more than 10 pounds occasionally, walk

no more than half a block at a time, and stand no more than 30 minutes a time as well as

sit no more than 60 minutes at a time.  R.49.  The Vocational Expert then testified that

this would indicate a sedentary RFC and at age 50 with a limited education and non-

transferable skills that Claimant would fall under medical vocational guideline rule

201.10, which would mandate a finding of disability.  R.49.

## E. ALJ's Decision

Following a hearing on March 11, 2010, and a review of the medical evidence, the

ALJ determined that Claimant was not disabled from her alleged onset date of February

1, 2007, through the date of the decision, upholding the denial of Claimant's application

for supplemental security income and disability insurance benefits.  R.23. The ALJ first

established that Claimant meets the insured status requirements of the Social Security Act

through December 31, 2011.  R.14. The ALJ then reviewed the Claimant's application

under the five-step sequential evaluation process.  R.14-23. At step one, the ALJ found

Claimant had not engaged in substantial gainful activity since February 1, 2007, the

alleged onset date.  R.14. At step two, the ALJ found Claimant suffers from the following

severe impairments: affective mood disorder, HIV, obesity, hypertension, osteoarthritis,

and asthma. At step three, the ALJ determined that Claimant did not have an impairment

or combination or impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  R.14.

The ALJ then considered Claimant's RFC in the context of the entire record and found that Claimant has the RFC to perform light work,[4] except that, "she can only occasionally climb ramps or stairs, stoop, kneel, crawl; she can never climb ladders, ropes, or scaffolds; she must avoid all exposures to unprotected heights or moving machinery; and she must avoid concentrated exposure to airborne irritants or poorly ventilated areas."  R.16. Additionally, from a mental standpoint, the ALJ found Claimant has a moderate inability to maintain attention and concentration for extended periods (ten percent of the time); and a moderate inability to complete a normal workday or workweek without interruptions from psychological-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (ten percent of the time)."  R.16.

The ALJ then assessed the Claimant's RFC in consideration with all of Claimant's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence, based on the requirements of 20 C.F.R. § 404.1529 and 416.929.  R.16.  The ALJ found that the Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, however the claimant's statements concerning the intensity, persistence, and limiting

---

[4] Light work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of up to 10 pounds and a "good deal" of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 404.1567(b). A "good deal" of walking or standing is described as doing so, off and on, for a total of approximately 6 hours of an 8-hour workday.  SSR 83-10.

effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's previously stated] RFC assessment." R.17.

The ALJ also considered the medical and mental opinion evidence as required by 20 C.F.R. § 404.1527. R.16. The ALJ noted that while the medical records vary considerably, they nonetheless support an RFC of light work for Claimant. R.20. Specifically, the ALJ noted that Claimant's treating physician Dr. Regina Kim provided an opinion that is consistent with the requirements for light work. R.20. However, the ALJ accorded Dr. Kim's opinion little weight because it contained inconsistencies that, in the ALJ's view, called into question the accuracy with which Dr. Kim did her analysis and completed the form she submitted on Claimant's behalf. For example, as noted above, Dr. Kim submitted a form that said Claimant could sit for two hours, stand for two hours and walk for one hour *at a time* and also do the same activity *in an eight hour day*. R.20.

The ALJ also accorded little weight to state agency consultant Dr. Frank Jimenez's opinion that the Claimant's physical impairments were not severe because this clearly contradicted the medical evidence. R.21. In contrast, the ALJ accorded great weight to the physical RFC assessment of a state agency consultant, Dr. Charles Wabner, as it was, in the ALJ's view, "supported by the longitudinal record." R.21.

The ALJ also considered the medical evidence relating to the Claimant's mental impairments. R.21-22. The ALJ accorded little weight to Claimant's treating source, Dr. Nancy Luna, finding that the overall record evidence strongly suggests that Claimant is not limited to the extent that Dr. Luna indicates. R.21. Dr. Luna found that Claimant

12

suffered from major depression, recurrent, severe without psychotic features and presented with a GAF of 40. R. 21. She found Claimant markedly and extremely limited in a number of mental activities. *Id.*

In contrast, the ALJ accorded great weight to state agency consultant Dr. Michael Schneider. R.21. Dr. Schneider's Psychiatric Review Technique and mental RFC assessment found Claimant to have only mild to moderate limitations due to her mental impairments. R.21-22. The ALJ noted that Dr. Schneider based his opinion on the fact that, "with the exception of Claimant's treating psychologist, none of the examining sources noted any problems with concentration or attending to the function of the assessment." R.21-22.

Consequently, at step four, the ALJ determined that Claimant is capable of performing her past relevant work as a home health aide. R.22. Therefore, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act. R.23.

## II. Legal Standard

### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by the ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id*. Judicial Review is limited to determining whether the decision is supported by substantial evidence in the record and

whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

14

**B. Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id*. Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## II. Discussion

An ALJ makes an RFC determination by weighing all the relevant evidence of record. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. In doing so, he must determine what weight to give the opinions of the claimant's treating physicians. 20 C.F.R. § 404.1527. Claimant argues here that the ALJ improperly credited the opinions of the non-treating, consulting physicians over the opinions of her own treating physicians without sufficient explanation of his reasons for doing so. The Court agrees, in one instance, and disagrees in another.

A treating physician's opinion is entitled to controlling weight if it is supported by the medical findings and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); Social Security Ruling ("SSR") 96-2p; *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). A contradictory opinion of a non-examining physician is not, by itself, sufficient for the ALJ to reject an examining physician's opinion. *Gudgel,* 345 F.3d at 470. Once well-supported contradictory evidence is introduced, however, the treating physician's opinion is no longer controlling but remains a piece of evidence for the ALJ to weigh. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). When an ALJ fails to credit a treating physician's opinion, he must at least minimally discuss the reasons that lead him to that result. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001).

The ALJ is not required to discuss every piece of evidence, but must build a logical bridge from the evidence to his or her conclusion. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). An ALJ may not "select and discuss only evidence that favors

his ultimate conclusion," but instead must consider all relevant evidence. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994); *Murphy v. Astrue,* 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing his conclusions, and must adequately articulate his analysis so that we can follow his reasoning."). If the final decision lacks evidentiary support or an adequate discussion of the issues, it will be remanded. *Villano*, 556 F.3d at 562; *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

## A. The ALJ did not adequately explain his decision to reject the opinion of Dr. Luna in favor of the opinion of Dr. Schneider

Claimant argues that the ALJ's decision to assign greater weight to the opinion of Dr. Schneider, a non-treating, consulting physician, than to the opinion of Dr. Luna, her treating physician, was supported by insufficient medical evidence and is directly contrary to the "medical evidence rule." Pls. Mem. 10. The Commissioner claims that the ALJ properly weighed the medical opinions along with the medical evidence in reaching his ultimate conclusion. Def. Resp. 2-9. The Commissioner argues "[w]hen treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." Def. Resp. 4; citing *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). That is not quite an accurate statement of the law in this Circuit, without more. As the Seventh Circuit said in *Gudgel v. Barnhart,* "an ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." 345 F.3d at 470.

17

As a practical matter, the cases cited by the Commissioner in support of his argument that the ALJ was justified here in rejecting Dr. Luna's opinion all involve situations where the treating physicians' opinions either contained internal inconsistencies or were otherwise unsupported by substantial evidence in the record. In a case such as this, where Claimant's treating physician's medical records are longitudinally consistent, his or her opinion is not so easily discounted. Rather, as the Seventh Circuit said in one of the cases the Commissioner cites, "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record. *Skarbeck*, 390 F.3d at 503.

The ALJ here did not explain sufficiently his rationale for rejecting Dr. Luna's opinion. While the ALJ acknowledges Dr. Luna as "a treating source," he goes on to say that "the overall record evidence strongly suggests that the Claimant is not limited to the extent Dr. Luna indicates." R.21. No further explanation is provided. The ALJ does not state what portions of "the overall record evidence" he is relying upon to discredit Dr. Luna. The ALJ makes no attempt to explain how or why Dr. Luna's opinion is inconsistent with her treatment notes or objective findings or evidence. This is insufficient. "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 737, 740 (7th Cir. 2011). The ALJ did not do that here.

In rejecting Dr. Luna's opinion, the ALJ adopted the opinion of consultative examiner Dr. Michael Schneider, who completed a psychiatric review on May 2, 2008. R.21. The ALJ states that Dr. Schneider opined that Claimant has only mild limitations in activities of daily living and social functioning and moderate limitations in maintaining concentration, persistence, or pace. R.21, 338. The ALJ then states that the overall record supports Dr. Schneider's opinion over Dr. Luna's and he awards Dr. Schneider's opinion greater weight. Again, no further analysis is provided. Unlike the cases cited by the Commissioner, the ALJ here did not provide an adequate explanation for giving more weight to a non-treating physician than to a treating physician particularly when, as here, the treating physician's opinion is consistent with her treatment notes and other medical evidence.

Moreover, the ALJ here did not take into account the factors required to be considered by 20 C.F.R. §404.1257(c) (SSDI) and 20 C.F.R. §416.927(c) (SSI) when evaluating the opinion of a treating physician against that of a non-treating source. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). First, the SSA requires an evaluation of the examining relationships of the medical sources. 20 C.F.R. §404.1527(c)(1); 20 C.F.R. §416.927(c)(1). "Generally more weight is given to the opinion of a source who has examined the claimant than the opinion of a source who has not examined the claimant." 20 C.F.R. §404.1527(c)(1); 20 C.F.R. §416.927(c)(1). The ALJ fails to acknowledge that Dr. Schneider never examined the Claimant here, but simply completed a Psychiatric Review Technique Form and an accompanying Mental RFC Assessment. R.21. In contrast, Dr. Luna examined Claimant over seventy-five times. R.476-495.

19

The second factor required to be considered under 20 C.F.R. §404.1527(c)(2) and 20 C.F.R. §416.927(c)(2) is the treating relationship of the sources. More weight is generally given to a medical source who has treated the Claimant than a medical source who has provided no treatment. 20 C.F.R. §404.1527(c)(2); 20 C.F.R. §416.927(c)(2). Dr. Luna provided treatment to the Claimant over a two-year period and formed a longitudinal picture of Claimant's condition. Dr. Schneider neither treated nor met with Claimant prior to providing his medical opinion. The ALJ fails to discuss this issue in his decision or explain why Dr. Schneider's views should be given greater weight than Dr. Luna's despite the fact that Dr. Schneider never met Claimant.

Third, 20 C.F.R. §404.1527(c)(3) and 20 C.F.R. §416.927(c)(3) require that the medical sources provide relevant medical evidence to support their opinions. Dr. Luna's medical opinion and mental RFC were based on over two-years of treatment notes and counseling sessions with the Claimant. Dr. Luna's treatment notes are detailed and in the record. In contrast, while Dr. Schneider's psychiatric review and mental RFC assessment were based on medical evidence, they were performed without review of the Claimant's entire medical record. Dr. Schneider reviewed Claimant's medical records on May 2, 2008. R.21. However, Dr. Luna saw Claimant after this date for more than another year, though August 11, 2009. R. 494. Dr. Schneider performed his evaluation without seeing Dr. Luna's records from May 2, 2008 through August 11, 2009. These records include treatment notes from counseling sessions concerning the removal of Claimant's children from her home by DCFS, her rape at the age of twelve, and Claimant's feelings of being overwhelmed by her health issues and powerless to make any changes. R.482-88. Except

20

for Claimant's rape at the age of twelve, these issues were not specifically addressed in the set of Claimant's medical records that Dr. Schneider reviewed. Moreover, the issue of Claimant's rape was addressed in more detail in subsequent records by Dr. Luna not considered by Dr. Schneider. Dr. Schneider also did not consider in making his decision the mental RFC performed by Dr. Luna on August 11, 2009. R.21, 495. Therefore, Dr. Schneider's assessment, which the ALJ relied upon to contradict the opinion of Dr. Luna, was done without the benefit of over a year of additional treatment notes from Dr. Luna and, thus, was not based on a complete review of all the relevant medical evidence. This undermines the weight the ALJ gave to Dr. Schneider's opinion.

Fourth, in evaluating medical sources the SSA requires an evaluation of the consistency of the opinion and states that "the more consistent an opinion is with the record as a whole the more weight the report deserves." 20 C.F.R. §404.1527(c)(4); 20 C.F.R. §416.927(c)(4). The ALJ here only makes conclusory statements that the record as a whole does not suggest Claimant is limited to the extend Dr. Luna indicates. R.21. The ALJ cites no record evidence to support that conclusion which fails to meet the requirements for evaluating medical evidence under 20 C.F.R. §404.1527(c)(4) and 20 C.F.R. §416.927(c)(4). This Court does not know what portions of the record the ALJ had in mind as being more consistent with Dr. Schneider's opinion than Dr. Luna's, and we are not required to pick through the record in an attempt to connect those dots.

The ALJ's failure to address these issues in the course of his decision to reject the opinion of Dr. Luna is directly contrary to the requirements of 20 C.F.R. §404.1527 and 20 C.F.R. §416.927 for evaluating treating sources. For this reason, we cannot tell

whether or not the ALJ's conclusions are based on substantial evidence.  With due deference to the ALJ's decision, we simply cannot figure out the basis on which he rejected Dr. Luna's opinion.  The logical bridge between the record evidence and the ALJ's conclusion to reject the opinion of Claimant's treating physician is missing.  As the Seventh Circuit has said, "[a]n ALJ must articulate, at least minimally, his analysis of the evidence so that this court can follow his reasoning."  *Clifford v. Apfel*, 227 F.3d 863, 870 (7th 2000).  Unfortunately, the ALJ did not do that here.

### B.  The ALJ adequately explained his decision to reject the opinion of Dr. Kim in favor of the opinion of Dr. Wabner

The ALJ accorded Dr. Kim's opinion little weight because it contained, "a number of inconsistencies that call into question the accuracy with which she completed the form."  R.20. The ALJ cited what he characterized as internal inconsistencies such as that the Claimant could sit for two hours, stand for two hours, and walk for one hour *at one time*, yet Claimant also could only sit for two hours, stand for two hours, and walk for one hour *total in an eight hour work day*. R.20, 501-02 (emphasis supplied). Similarly, the ALJ also characterized as inconsistent Dr. Kim's opinion that Claimant cannot walk one block at a reasonable pace over a rough or uneven surface and cannot climb steps at a reasonable pace with the use of a single hand rail, but can walk for one hour without interruption and does not need a cane to ambulate.  R.20, 502, 506.

The ALJ also noted that Dr. Kim stated that Claimant "does not retain the ability to hear and understand simple oral instructions," and cannot communicate on a telephone, yet neither Dr. Kim nor the Claimant ever identified any hearing impairment. R.20.

22

Likewise, the ALJ noted that Dr. Kim indicated Claimant suffers from vision problems in that she cannot read small type, but can read a newspaper and a computer screen. R.20. The ALJ states that, "such contradictions call into question the deliberation the doctor used in completion of the form" and thus awarded Dr. Kim's opinion little weight.  R.20.

The ALJ's evaluation of Dr. Kim's opinion provides substantial evidence to support his findings. The ALJ may discount a treating physician's opinion if it is internally inconsistent. *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). When a treating physician's opinion is internally inconsistent, the ALJ must adequately articulate his reasons for discounting that opinion. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). Here, the ALJ notes that Dr. Kim reports impairments in Claimant's ability to hear and understand oral instructions despite no medical records that reference those impairments or Claimant ever identifying any hearing impairment. Additionally, the ALJ cited inconsistencies and contradictions within Dr. Kim's evaluation of Claimant's ability to stand and walk for certain periods of time and on specific surfaces without the use of an assistive device. The ALJ stated that the contradictions in Dr. Kim's opinion "call into question the deliberation the doctor used in completing the form."  R. 20.  Taken together, this is an adequate articulation of substantial evidence to support the ALJ's determination to accord Dr. Kim's opinion little weight.  Whether this Court would reach a different conclusion on the evidence is immaterial.  The ALJ articulated the evidence that he felt supported his decision, there is a logical bridge between the evidence and the ALJ's conclusion, and this Court should not displace the ALJ's decision under these circumstances.

Moreover, Dr. Kim's opinion falls short of establishing that Claimant is disabled. The Claimant ultimately bears the burden of providing medical evidence to prove she is disabled. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (Court ruled Claimant failed to meet her burden because she was unable to provide medical evidence establishing a link between her chronic fatigue syndrome to the unacceptable level of absenteeism she alleged). In Dr. Kim's treatment notes, she reports that Claimant suffers from pain in her legs which limits her ability to walk. R.508. Yet, Dr. Kim also states that Claimant retains the ability to shop, prepare meals, ambulate and travel without assistance, and sort, handle, and use paper/files. R.506. No other significant medical evidence is provided by the Claimant to support her physical disability. Dr. Kim's medical records therefor fail to meet Claimant's burden of proving her physical disability.

In contrast to his evaluation of Dr. Kim's opinion, the ALJ accorded more weight to state agency consultant Dr. Charles Wabner. R.21. The ALJ notes that Dr. Wabner opined that Claimant has the capacity to perform light work with several non-exertional limitations. R.21. The Court recognizes that while the ALJ's evaluation of Dr. Wabner's opinion is not a model road map of the substantial evidence underlying his conclusion to credit Dr. Wabner's opinion over Dr. Kim's, it is supported by the record, and the ALJ does at least minimally quote from Dr. Wabner's RFC assessment in a way that allows the Court to see that it is consistent with Dr. Kim's medical records and assessments.[5]

---

[5] The ALJ's assessment of Dr. Wabner's opinion is as follows:
> "However, the opinion of State agency consultant Charles Wabner, M.D., bears more weight. In a Physical RFC Assessment dated May 6, 2008, Dr. Wabner opined that the claimant has the capacity to perform work at the light exertional

Lending further weight to the Court's conclusion that the ALJ's decision to reject Dr. Kim's opinion and to accept Dr. Wabner's opinion is supported by substantial evidence is the fact that the ALJ rejected another non-treating source's opinion as inconsistent with Claimant's longitudinal treatment record. Accordingly, as substantial evidence supports the ALJ's conclusions, the Court upholds the ALJ's opinion with regard to Claimant's physical impairments.

## IV. Conclusion

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant Leona Jean Stephenson's motion for summary judgment [Dkt.#20] is granted in part and denied in part. The decision of the Commissioner of Social Security with respect to Claimant's mental impairments is reversed and this matter is remanded to the Social Security Administration for further proceedings consistent with the Court's

---

level with the following nonexertional limitations: occasional kneeling, crouching, crawling, and climbing, but no climbing of ladders, ropes or scaffolds; and avoid concentrated exposure to airborne irritants (Exhibit 9F.) Because Dr. Wabner's opinion is supported by the longitudinal record, the undersigned accords it great weight." R.21.

Memorandum Opinion and Order.  The Commissioner's decision with respect to

Claimant's physical impairments is affirmed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   November 8, 2012